AO 91 (Rev. 8/85) Criminal Complaint

# United States District Court

__NORTHERN__ DISTRICT OF __TEXAS__

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
        FILED
      DEC 22 2006
CLERK, U.S. DISTRICT COURT
By _____
        Deputy
```

UNITED STATES OF AMERICA
V.
Guadalupe Santana Martinez

## CRIMINAL COMPLAINT

CASE NUMBER: 3:06-MJ-532

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about October 1, 2006 in Dallas County, in the Northern District of Texas defendant(s) did,

> knowingly conspire and agree with one or more persons to make unauthorized access to telephone company computer servers which are used in interstate and foreign commerce, for the purpose of inserting or modifying telecommunication identification information associated with or contained in a telecommunications instrument in order to obtain telecommunications service without authorization,

in violation of Title 18, United States Code, Section(s) 371, 1030 and 1029.

I further state that I am a(n) Special Agent of the Federal Bureau of Investigation and that this complaint is based on the following facts:

> See attached Affidavit of Special Agent Allyn Lynd, FBI, which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:   X Yes     No

_____
Signature of Complainant
ALLYN LYND
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence, on this 22nd day of December, at Dallas, Texas.

HONORABLE IRMA C. RAMIREZ
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Allyn Lynd, having been duly sworn, depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been assigned to the Dallas Division of the FBI since 1997. I make this affidavit in support of an application by the United States of America for the issuance of a Complaint and warrant to arrest **Guadalupe Santana Martinez**, for criminal acts in violation of 18 U.S.C. §§ 371, 1029 and 1030, statutes pertaining to conspiracy, fraud and related activity in connection with access devices, and fraud and related activity in connection with computers. As described in more detail below, there is probable cause to believe that **Guadalupe Santana Martinez** and others have used hardware or software to insert or modify telecommunication digital data consisting of identity information associated with or contained in a telecommunications instrument, telecommunications computer servers, so that such instrument may be used to obtain telecommunications service without authorization.

2. I am currently assigned to the FBI Dallas CYBER Squad which conducts investigations of theft of trade secrets, computer crimes including unauthorized access to protected computers, i.e., intrusions or hacking, and copyright infringement. For approximately the last eight years, I have been involved in the investigation of computer intrusions, copyright and trademark infringement violations, high-tech fraud, and theft of trade secrets. During my career as a Special Agent of the FBI, I have participated in numerous investigations involving the above-described offenses. I have interviewed a large number of individuals who have committed the above offenses and have

1

participated in arrests regarding the same criminal violations. I have also examined documents and electronic and physical records, and other items recovered from the arrests of subjects and searches of premises involved in these types of activities. Additionally, I have received specialized training in the field of intellectual property rights and computer intrusions. Based on the above, I have developed expertise in the use of computers and electronic communication in various criminal activities.

## APPLICABLE CRIMINAL STATUTE

3. There is probable cause to believe that Guadalupe Santana Martinez, has violated the provisions of U.S.C. §§ 371, 1029, and 1030. The pertinent provisions of those criminal statutes are set forth below:

**§ 371. Conspiracy to commit offense or to defraud United States**

If two or more persons conspire either to commit any offense against the United States . . ., and one or more of such persons do any act to effect the object of the conspiracy, each shall be [punished in accordance with law].

**§ 1029. Fraud and related activity in connection with access devices**

(a) Whoever--

(9) knowingly uses, produces, traffics in, has control or custody of, or possesses hardware or software, knowing it has been configured to insert or modify telecommunication identifying information associated with or contained in a telecommunications instrument so that such instrument may be used to obtain telecommunications service without authorization [shall be punished in accordance with law].

**§ 1030. Fraud and related activity in connection with computers.**

(a) Whoever--

    (5)(A)(ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage . . . [shall be punished in accordance with law].

. . .

(e)(2) the term "protected computer" means a computer—

. . .

    (B) which is used in interstate or foreign commerce or communication . . . .

## FACTS IN SUPPORT OF AFFIDAVIT

4.    I make this affidavit in part on personal knowledge based on my participation in this investigation, upon the information provided to me by other law enforcement personnel, and, in part, upon information and belief. The sources of my information and beliefs are:

    (a)    Oral and written reports provided to me by employees of the Fort Worth Police Department (FWPD), Fort Worth, Texas;

    (b)    Oral and written reports provided to me by employees of State Probation Department Kent, Washington;

    (c)    Oral and written reports about this investigation which I have received from other employees of the FBI;

    (d)    My independent investigation;

(e) Oral and written reports provided to me by employees of the Kent, Washington Police Department (KPD);

(f) Oral and written reports provided to me by employees of the Johnson County, Texas, Sheriff's Office; and

(g) Oral and written reports provided to me by cooperating individuals;

5. Since this affidavit is being submitted for the limited purpose of obtaining a complaint and arrest warrant for **Guadalupe Santana Martinez**, I have not set forth each and every fact learned during the course of this investigation. Facts not set forth in the affidavit are not being relied upon for probable cause.

6. In early October, 2006, I spoke with Detective Thompson of the FWPD who informed me that on October 1, 2006, the FWPD had responded to what they believed was an emergency 911 telephone call requiring an immediate police response to 9209 Saddlehorn Drive, #207, Fort Worth, Texas. The caller identification for the 911 phone call requesting assistance was the phone number assigned by the telephone company to the apartment resident. Upon arriving at the residence, law enforcement officers learned that the residence was an address that they had previously responded to for a false 911 call for assistance on another occasion. Detective Thompson told me FWPD had interviewed the apartment resident, Stephanie Proux. Proux denied making the false 911 call and stated that the false 911 call had been made by a group of individuals known to her for the purpose of harassing her. She identified the group of individuals as **Guadalupe Santana Martinez**, Stuart Rosoff, and Jason Trowbridge. In a subsequent interview with me in November 2006, Proux admitted that she had belonged

4

to this group and participated in telephone conference chats with them on a regular basis. In the interview with FWPD She told the police that these individuals possessed the skill and means to spoof, or mask, their caller identification numbers in order to make it appear as if the false 911 call for emergency services had originated from phone numbers for the individuals who they were harassing in order to make the emergency call appear genuine. She also told Detective Thompson that the person who had caused the false 911 call to the FWPD on that occasion was **Guadalupe Santana Martinez**. Proux stated that the members of the group called the practice of directing local law enforcement to respond to an address for a false 911 call for harassment "swatting" as their goal was to have a SWAT team respond in full regalia, with guns drawn, which would alarm the residents. Proux stated that one of the telephone systems or telephone conference groups which the swatting group used to communicate was known as either the "Jackie Donut" or the "Seattle Donut." Additionally, she told Detective Thompson that her parents had also been harassed by the swatting group in the same manner.

7.   In early October, 2006, I confirmed with the Johnson County Sheriff's Office that they had also received what appeared to be a false 911 emergency call in June of 2006 from someone claiming to be James Proux, Stephanie's father, and this unknown individual had told the 911 operator that he had been using controlled substances, that he had an AK-47 assault rifle, that he had shot his wife, and that he wanted $50,000 or he was going to kill his daughter and any police who tried to stop him. The phone number identified the call as coming from 9001 CR 109 Lot 15, Alvarado, TX, the home of James Proux. A SWAT team was dispatched to the location, and learned that the call had

5

been a hoax. James Proux was interviewed by the Sheriff's Office and he denied making the call and stated that he had been receiving harassing phone calls from members of a phone chat line group who were mad at his daughter Stephanie and that they had been calling for about two weeks making threats including a threat from members of the group that he had received about one week prior to the false 911 call stating that they would be executing a hoax 911 call to his residence. The group was trying to harass Stephanie's family into putting pressure on Stephanie and her chat activities.

8. Based on the above, I conducted records checks on **Guadalupe Santana Martinez**, Stuart Rosoff, and Jason Trowbridge. Numerous complaints had been lodged with the FBI against **Martinez**, Rosoff and Trowbridge for telephonic harassment, extortion, unauthorized termination of telephone services, and "swatting". **Guadalupe Santana Martinez** and Stuart Rosoff both have extensive criminal histories including numerous charges against them for making false 911 emergency services calls and telephone harassment. I noted that **Guadalupe Santana Martinez** has charges pending against him in Kent, Washington. I also noted that other law enforcement agents had documented an interview of **Guadalupe Santana Martinez'** probation officer in Kent, Washington in which the Probation Officer had identified additional victims of swatting.

9. In October, 2006, I contacted both the KPD and State Probation Department in Kent, Washington and was told that **Guadalupe Santana Martinez** had outstanding warrants for his arrest in Kent, Washington for failure to appear for court appearances related to telephone harassment and making false statements. I was told that Kent, Washington had two outstanding arrest warrants for **Guadalupe Santana**

6

**Martinez** and that the Probation Department knew of at least one other arrest warrant for **Martinez** from Lakeland, Washington for failure to appear for court appearances related to telephone harassment charges. The KPD also told me that the last known good address for Guadalupe Santana Martinez was in Beaverton, Oregon.

10. On or about October 10, 2006, I contacted employees of AT&T who I know from previous telephone abuse investigations, and they told me that they were familiar with the group using the "Donut" telephone chat line, which Stephanie Proux had identified as the "swatting group," and AT&T also told me that one of their investigators could provide me with background information on it. AT&T investigators told me that the members of the "Donut" group that Stephanie Proux had identified and others connected with them such as Matthew Weigman of Boston, Massachusetts, were engaged in conduct to gain unauthorized access to the telephone network for the purpose of harassment and theft of services. I was told that they used a variety of methods for gaining access to the phone system including plain old telephones, cell phones, and Voice over Internet Protocol (VoIP). They also employed a number of means to hide their identities when using the phone system to include software on their computers for altering and modifying their phone numbers so that they could obtain services they would not otherwise be entitled to. AT&T stated that there were two pieces of identifying information contained within the telephonic devices being used by the group that were being modified in order for them to further their schemes, including the ANI (caller identification number). The group also purchased hardware for this purpose and used access devices designed to do this. Stephanie Proux confirmed this in her interview with

7

me and described one example of such behavior to me. She told me that Guadalupe Santana Martinez and the others altered their caller information so that it would appear as if they were calling from a telephone company employee's phone to have service turned on or off at a physical location. Another example was for them to modify their own telephone subscriber information so that Guadalupe Santana Martinez and others could "swat" someone more successfully. AT&T stated that they believed based on their investigation that Guadalupe Santana Martinez and the others involved in the swatting group were using multiple means of modification to include both custom written software and a service known as a spoofcard to accomplish the alterations. Again, Stephanie Proux confirmed that they used a spoofcard and various other means to do this. AT&T also told me that the individuals involved in the swatting group committed identity theft in order to further their scheme, and that other AT&T employees were being victimized by the swatting group by the misappropriation of the AT&T employees' identities and passwords in order to make the swatting group's illegal accesses appear more legitimate. AT&T told me that Matthew Weigman, a member of the swatting group, had registered telephone service for himself at his physical address in Boston, Massachusetts by using the identity of an AT&T employee. I conducted a records check and it appeared as if service at the address which Weigman used for telephone service was in the name of an AT&T representative not Matthew Weigman.

11. In late October, 2006, Employees of AT&T also told me that for the false 911 call involving Stephanie Proux's residence on October 1, 2006, the originating caller i.d. appeared to be a cell phone located in the Pacific Northwest which had traversed a

8

telephone switching system for cell phones located in Grand Prairie, Texas.

12. On or about November 21, 2006, I interviewed a cooperating witness who told me that an individual member of the "swatting" group used the moniker of "little hacker" but his real name was Matthew. The cooperating witness claimed that they had been in telephonic conversation with Matthew Weigman since early 2006 and that Weigman had as recently as October, 2006 claimed to be using his access to a telephone company Network Operations Center (NOC) to terminate phone services to individuals. Through independent investigation I identified a phone number originating at Weigman's address as one which was used to gain unauthorized access to Frontier Telecommunications NOC in Rochester, New York beginning prior to October 2006 and extending to November, 2006. The cooperating witness stated that Weigman had claimed to have this access by a variety of means, including social engineering, a technique used by hackers to obtain confidential information and passwords through the impersonation of authorized individuals. The cooperating witness told me that Matthew Weigman, **Guadalupe Santana Martinez**, Stuart Rosoff, Jason Trowbridge, and others belonged to the "swatting" group and that they cooperated together via computer and telephone to commit identity theft, fraud, theft of services, telephone harassment, and various other offenses. The cooperating witness described Weigman's roll in the conspiracy to me as the individual who was responsible for altering telephone services in furtherance of this scheme. The Cooperating witness described Guadalupe Santana Martinez's roll in the conspiracy to me as the individual who was responsible for making the harassing calls in furtherance of this scheme, hence his nickname of "Wicked Wizard". The cooperating

witness confirmed to me the reports of AT&T investigators that the "swatting" group used commercial services to disguise and conceal who they were, such as online spoofing services and the purchase of telephone calling cards. I believe the cooperating witness to be reliable as I have been able to verify a large portion of the information provided to me by the cooperating witness through records checks and other investigation. I also believe that the cooperating witness has access to the information that is being provided to me.

13.   In November 2006, I interviewed Stephanie Proux. She told me that she frequented telephone chat rooms including the "Jackie Donut" and the "Seattle Donut," and that she has been in the same chat rooms as Guadalupe Santana Martinez, Stuart Rosoff, and Jason Trowbridge. She told me that she overheard one of the individuals in the telephone chat room offer $500 to the person who "swatted" her. She told me that she recognized the voice of **Guadalupe Santana Martinez** as the "badly disguised voice" on the phone in the recording of the false 911 call in which he was pretending to be Proux in order to facilitate the "swatting." She also told me that making harassing calls was **Guadalupe Santana Martinez's** role in the group. She believed that the caller used the aforementioned "spoofcard" to modify his identity for the purpose of this call. Proux also told me that her phone service had been terminated multiple times by the members of the "swatting" group and that her parent's phone service had been altered without their permission. Proux also told me that she had learned the identifies of the individuals while chatting with them. She told me that some of the individuals had a web site www.partylinegugu.com where they posted photographs of the individuals in the telephone chat group. I examined the photos on the web site and located one for "Lupe,"

one of **Guadalupe Santana Martinez's** known online aliases and one for Rosoff under the alias "Michael Knight." I compared the photo for "Michael Knight" to a driver's license photo of Rosoff. They appear to me to be of the same individual. I also spoke with FBI agents in Portland, Oregon who have been attempting to locate **Martinez**. The agents had seen a driver's license photo of **Martinez** from the Oregon DMW, and they told me that the photo of **Martinez** on the web site partylinegugu.com was of the same individual identified as Guadalupe Santana Martinez by the Oregon DMW. In addition, Proux told me that the individual who runs the partylinegugu.com web site is Jason Neff and that Neff is a member of the swatting group and goes by the nick name "Crazy J." Neff is known to me from previous investigations into telephone hacking dating back to 1999 and has been the subject of multiple computer intrusion investigations.

14.   In October 2006, I sent a request to the FBI Offices in Portland, Oregon, for the purpose of identifying **Guadalupe Santana Martinez** based on the information provided by AT&T, KPD, and Proux. While attempting to locate **Guadalupe Santana Martinez**, the Portland FBI office learned that he had moved from his last known location; that family members and former friends whom they interviewed believed he was involved in telephone fraud, computer fraud, and identity theft; and that he was on the run to avoid prosecution for those offenses. Portland FBI is aware of some locations that **Guadalupe Santana Martinez** visits on an irregular basis and believes that they can apprehend him if and when he visits those locations.

15.   I listened to consensually made recordings of the swatting group in their telephone conference chat from November 2006. In one of the calls, several of the

11

members of the group threatened to have Proux "swatted" again. One of the members stated that he would pay $300 per "swat" if someone would "swat" both Proux's parents and siblings. During this discussion, numerous individuals, including one identified by a cooperating individual as **Martinez** were heard laughing about the original "swatting." Discussions among them included the information that **Martinez** did "swat" Proux, but that he did it only after another conspirator offered to pay him to do it. In what appeared to be an effort to provoke Proux, numerous comments were made to the effect that Proux's parents had avoided further "swatting" because Proux's mother was providing phone sex to **Martinez** in exchange for him leaving them alone.

16. In December 2006, I interviewed a second cooperating individual who told me that he/she had been participating in the swatting group for over one year and that he/she was very familiar with the other members of the group. This individual told me that he/she had heard a recording of the false 911 call related to the swat Proux and that they recognized the voice in the telephone conference as **Martinez**. In addition, he/she had heard multiple conversations discussing the "swatting"of Proux in which the members of the group referred to **Martinez** was the one who had "swatted" her. As with the other cooperating witness, I believe this cooperating witness to be reliable as I have been able to verify a large portion of the information provided to me by the cooperating witness through records checks and other investigation. I also believe that the cooperating witness has access to the information that is being provided to me. In addition, the information provided to me by both cooperating witnesses corroborated each other's information.

## CONCLUSION

17. Based upon the facts contained in this affidavit, I submit there is probable cause to believe that **Guadalupe Santana Martinez** has conspired with others to use, gain control or custody of, or possess hardware or software, knowing it has been configured to insert or modify telecommunication identifying information associated with or contained in a telecommunications instrument so that such instrument may be used to obtain telecommunications service without authorization, and to make unauthorized access to protected computers in violation of 18 U.S.C. §§ 371, 1029 and 1030 concerning conspiracy, fraud and related activity in connection with access devices, and fraud and related activity in connection with computers, and request the issuance of a Complaint and arrest warrant for **Guadalupe Santana Martinez**.

_____
Allyn Lynd, Special Agent
Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED before me this 22nd day of December, 2006.

_____
HONORABLE IRMA C. RAMIREZ
United States Magistrate Judge

13